IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Civil Action No. 14-cv-00031-WYD

JAMIE L. BERTRAM,

    Plaintiff,

v.

CAROLYN W. COLVIN, Commissioner of Social Security,

    Defendant.

# ORDER

THIS MATTER is before the Court on review of the Commissioner's decision that denied Plaintiff's application for disability benefits under Title II of the Social Security Act ["the Act"], 42 U.S.C. §§ 401-433.  For the reasons stated below, this case is reversed and remanded to the Commissioner for further fact finding.

I.    BACKGROUND

On March 29, 2011, Plaintiff applied for disability benefits alleging that she became unable to work at age 31 in November 2010 due to complex regional pain syndrome ["CRPS"], also referred to as Reflex Sympathetic Dystrophy ["RSD"], and tarsal tunnel syndrome in both feet.  (Administrative Record ("AR") 17, 106-07, 126, 130.)  A hearing was held in August 2012 (*id*. 41-71), after which the administrative law judge ["ALJ"] issued an unfavorable decision on September 2, 2012.  (*Id*. 14-29.)

In the sequential evaluation process required by law, the ALJ found at step one that Plaintiff met the insured status requirements of the Act through December 31, 2015,

and that Plaintiff had not engaged in substantial gainful activity since November 1, 2010, the alleged onset date. (AR 19.) At steps two and three, the ALJ found that Plaintiff had severe impairments of tarsal tunnel bilateral feet and RSD, but that such impairments did not meet or medically equal the severity of one of the listed impairments. (*Id.* 19-20.)

As to Plaintiff's residual functional capacity ["RFC"], the ALJ found that she could "perform sedentary work at or above waist level as defined in 20 CFR 404.1567(a) except she should not be exposed to unprotected height and could not use foot or leg controls." (AR 20.) At step four, the ALJ found that Plaintiff could not perform her past relevant work. (*Id.* 23.)[1] At step five, the ALJ retained a vocational expert who opined that an individual with Plaintiff's RFC could perform the requirements of representative occupations such as drive-in order clerk, call out operator, and telephone quotation clerk. (*Id.* 24.) Based on this, the ALJ found that Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy, and that she was not disabled. (*Id.*)

The Appeals Council denied Plaintiff's request for review (AR 7-13), making the ALJ's decision the final decision of the Commissioner. Plaintiff timely sought review.

Plaintiff argues that the ALJ improperly rejected the opinion of her treating physician Dr. Sandell, as he did not apply the proper legal standard and did not provide legitimate reasons for rejecting Dr. Sandell's opinions. Second, Plaintiff argues that the

---

[1] Plaintiff completed one year of college and previously worked as a medical assistant and receptionist. (*Id.* 131.)

ALJ erred by finding that she has no limitation on the use of her upper extremities. Third, she asserts that the ALJ erred by failing to consider the statements of lay witnesses. Fourth, Plaintiff contends that the ALJ's credibility determination is unsupported by substantial evidence. As a result of these errors, Plaintiff argues that the RFC determination is not consistent with governing law and is not supported by substantial evidence.

II.     ANALYSIS

    A.     Standard of Review

A Court's review of the determination that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence. *Hamilton v. Sec. of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). "It requires more than a scintilla of evidence but less than a preponderance of the evidence." *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988).

"Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). "[I]f the ALJ failed to apply the correct legal test, there is a ground for reversal apart from substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). However, the court "must 'exercise common sense' in reviewing an ALJ's decision and must not 'insist on technical perfection.'" *Jones v. Colvin*, 514 F. App'x

813, 823 (10th Cir. 2013) (quotation omitted). Further, in reviewing the record to make the substantial evidence determination, the court may not reweigh the evidence nor substitute its judgment for that of the Commissioner's. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).

  B. <u>Plaintiff's Arguments</u>

    1. <u>Treating Physician Dr. Sandell and Plaintiff's Upper Extremity Impairments</u>

  Dr. Sandell provided a detailed opinion regarding Plaintiff's functional limitations. (AR 399-402.) He stated that due to her CRPS and guarded prognosis, she is limited to sitting for less than two hours per day, and standing and walking less than two hours per day. Due to her pain levels, he opined that she requires a job that permits changing positions at will, and the ability to take frequent, unscheduled breaks, as frequently as every fifteen minutes. (*Id.* 399.) He also stated that she needs to elevate her legs and use a cane for stability when walking. (*Id.* 400.) Due to her upper extremity pain and weakness, he significantly limited the use of her hands and arms: grasping 10% of a workday, fine manipulations 5% of a workday, and no reaching. (*Id.* 401.) He stated that she would be off-task for 20% of a workday due to her symptoms. (*Id.* 402.) Dr. Sandell based his opinion on Plaintiff's "clinical history and physical exam findings [that are] consistent with CRPS." (*Id.* 399.)

  The ALJ chose to give weight "only to that portion of the decision [sic] that indicates the claimant would not be able to climb stairs or ladders." (AR 22.) Had the ALJ accepted Dr. Sandell's opinion, Plaintiff asserts that the ALJ would have been

forced to find Plaintiff disabled. Indeed, the vocational expert testified that the limitations Dr. Sandell provided would render Plaintiff unemployable.

Turning to my analysis, I agree with Plaintiff that the ALJ erred as he did not follow the proper legal standard for evaluating a treating physician's opinion. The initial determination the ALJ must make is whether the treating physician's medical opinion "is conclusive, i.e., is to be accorded 'controlling weight,' on the matter to which it relates." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). "Such an opinion must be given controlling weight if it is well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Id.*

Here, while the ALJ acknowledged that "controlling weight can be given to treating provider's opinions" (AR 22), he did not discuss the applicable test or state which of the conditions for giving controlling weight to Dr. Sandell's opinion was lacking. The Commissioner argues that there was no error by referring to *Mays v. Colvin*, 739 F.3d 569, 575 (10th Cir. 2014), wherein the Tenth Circuit refused to reverse simply because the ALJ did not explicitly state whether he gave controlling weight to a medical opinion. As Plaintiff notes, the argument that was rejected in *Mays* is not the same argument that Plaintiff has raised in this case. Here, it is obvious the ALJ did not give controlling weight to Dr. Sandell's opinion, but the substantive error is the failure to explain the basis for that decision. *Watkins v. Barnhart* 350 F.2d 1297, 1301 (10th Cir. 2003) ("In this case, the ALJ obviously did not give Dr. Rowland's opinion controlling

Case 1:14-cv-00031-WYD Document 22 Filed 03/24/15 USDC Colorado Page 6 of 16

weight, but he did not articulate a reason. A finding at this stage . . . is necessary so that we can properly review the ALJ's determination on appeal").

Moreover, even if Dr. Sandell's opinion was not entitled to controlling weight, it was still entitled to deference. "[A]t the second step in the analysis, the ALJ must make clear how much weight the opinion is being given. . . and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned." *Krauser*, 638 F.3d at 1330. There is no indication that the ALJ gave deference to Dr. Sandell's opinion or that he weighed the factors he was required to weigh in deciding what level of deference Dr. Sandell's opinion should have been given. *See Watkins*, 350 F.3d at 1300.[2] This is reversible error.

I find the case of *Andersen v. Astrue*, 319 F. App'x 712 (10th Cir. 2009) to be particularly instructive on this issue. The Tenth Circuit made clear in that case that even where the treating physician's opinion is not entitled to controlling weight, "an ALJ is not free to simply disregard the opinion *or pick and choose which portions to adopt*", as the ALJ did in this case. *Id.* at 718 (emphasis added). Moreover, as in the *Anderson* case, the ALJ appeared to consider only the supportability factor in giving little weight to Dr. Sandell's opinion. The Tenth Circuit has found this to be insufficient, stating that

---

[2] As summarized in *Watkins,* the regulatory factors are (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Id.* at 1301.

"[a]lthough supportability might prove determinative, that can only be decided after consideration of the other factors". *Id.* at 722. The *Anderson* court concluded that "the ALJ's cursory treatment of the physician's opinions. . . does not satisfy us that the ALJ *considered* all the relevant factors." *Id.* at 722-23 (emphasis in original).

In addition to not properly weighing the opinion under the treating physician rule, I find that the reasons stated by the ALJ do not provide substantial support for his decision to reject all but one of Dr. Sandell's findings. The ALJ first stated that the limitations "far exceed any limitations noted in his treatment and progress notes." (AR 22.) He did not specify, however, what treatment or progress notes he was referring to or explain how they supported his finding. This was error. *See King v. Astrue*, No. 09-cv-02112-REB, 2010 WL 3720039, at * 3 (D. Colo. Sept. 13, 2010) (where an ALJ's conclusion that a doctor's opinion was inconsistent with his treatment notes was "largely unexplained and unsubstantiated", the court found that "[s]uch a conclusion in the guise of a finding cannot stand"); *see also Krauser*, 638 F.3d at 1331. Moreover, as Plaintiff points out, Dr. Sandell's opinion is consistent with numerous references in Plaintiff's medical records that describe her severe pain and support Dr. Sandell's opinion regarding her diagnosis and the limiting effects of her pain. (*See, e.g.,* 197-98, 396-98.) The ALJ did not specifically mention or discuss any of this evidence, much less explain why it did not support Dr. Sandell's opinion.[3]

---

[3] I also note that this evidence casts substantial doubt on the ALJ's finding that the records from Dr. Sandell and Dr. Ford show that steroid injections which Plaintiff received "were successful in addressing her pain." (*Id.* 21.) While they may have provided temporary relief, there is no evidence that they resolved her pain.

I also agree with the Third Circuit's finding that there is a distinction between a doctor's notes for purposes of treatment and that doctor's ultimate opinion on the claimant's ability to work. *Brownawell v. Comm'r of Soc. Security*, 554 F.3d 352, 356 (3rd Cir. 2008). The *Brownawell* court noted that a doctor's assessments were not necessarily contradictory when one was describing Brownawell's condition at the time of examination and the other reflected the doctor's assessment of Brownawell's ability to function in a work setting. *Id.*; *see also Taylor v. Chater*, 118 F.3d 1274, 1278 (8th Cir. 1997) ("[T]he lack of information [regarding limitations] contained in any of the reports completed by [claimant's] doctors does not qualify as an inconsistency in the evidence as a whole. The medical reports certainly made no attempt to catalog [the claimant's] every pain and her behavior resulting from the pain."). Had Dr. Sandell documented specific functional capabilities or activities that conflicted with his opinion, that would qualify as an inconsistency. But he did not do that.

I also find the ALJ erred in rejecting the vast majority of Dr. Sandell's report because while Plaintiff "clearly. . . has limitations in her lower extremities,. . .none of the objective studies support the functional, postural and manipulative limitations cited." (AR 22, *see also* 19.) Dr. Sandell based his decision on his diagnosis of CRPS and the pain, fatigue and other symptoms associated with same. (*Id.* 399.) The ALJ failed to recognize that CRPS/RSD is by definition "a chronic pain syndrome". SSR 03–2p, *Titles II and XVI: Evaluating Cases Involving Reflex Sympathetic Dystrophy Syndrome/Complex Regional Pain Syndrome,* 2003 WL 22399117, at *1 (Oct. 20, 2003) (cited in *Oldham v. Astrue*, 509 F.3d 1254, 1255 n. 1 (10th Cir. 2007)). It is not

diagnosed through the type of objective studies referenced by the ALJ but "upon 'complaints of persistent, intense pain that results in impaired mobility of the affected region,' coupled with other complaints, including swelling, '[a]utonomic instability—seen as changes in skin color or texture, changes in sweating (decreased or excessive sweating), skin temperature changes, or abnormal pilomotor erection (gooseflesh),' abnormal hair or nail growth—either too slow or too fast, osteoporosis, or involuntary movements of the affected region." *Id.* at *2. Further, it "is characteristic of this syndrome that the degree of pain reported is out of proportion to the severity of the injury sustained by the individual." *Id.* at *1. Thus, the ALJ's finding on this issue is not supported.

Finally, the ALJ stated that Dr. Sandell failed to state when Plaintiff's symptoms became so severe as to warrant the extreme limitations. This does not, however, provide a basis to simply reject Dr. Sandell's opinion. Instead, this implicated the ALJ's duty to contact the doctor for clarification. *See Maes v. Astrue*, 522 F.3d 1093, 1097 (10th Cir. 2008); *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002).

Based upon the foregoing, I agree with Plaintiff that the ALJ erred in his weighing and analysis of Dr. Sandell's opinion, and that this requires a remand. The error to properly weigh the treating physician's opinion also may impact the ALJ's decision to give "great weight" to consultative examiner Dr. Torberntsson's opinion. (AR 22.) Obviously, if the ALJ concludes that Dr. Sandell's opinion should have been given greater weight, he would not be justified in relying on the contrary opinion of the consultative examiner.

Upon remand, the ALJ must adequately consider and weigh Dr. Sandell's opinion and *all* of his findings. As Plaintiff notes, this includes a proper assessment of the upper extremity limitations imposed by Dr. Sandell. The evidence shows that Plaintiff has CRPS in her legs as well as in her right arm. Indeed, Plaintiff saw Dr. Sandell in October 2010 because her upper extremity pain had returned. (AR 200.) On November 18, 2010, Dr. Sandell documented that "she is a little bit worse. She has pain with extension of the right upper extremity (RUE)." She reported that she "is not seeing much benefit from [the Neurontin]." (*Id.* 199.) In December 2010, Dr. Sandell noted that "her symptoms remain the same regarding having increase in the right upper extremity (RUE). She reports one episode where she had significant reduction in strength diffusely in the RUE." (*Id.* 202). Since that time she has received multiple stellate ganglion blocks in an attempt to manage her pain levels. (*Id.* 239-352.) Further, Plaintiff noted when she tries to reach with her right arm, she "can only reach very little then I lose strength in my hand." (*Id.* 157.) The ALJ did not adequately assess this condition.

        2.     <u>ALJ's Credibility Determination</u>

Plaintiff also argues, and I agree, that the ALJ erred in the credibility determination. "'Credibility determinations are peculiarly the province of the finder of fact", and the court should "not upset such determinations when supported by substantial evidence.'" *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quoting *Diaz v. Sec. of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990)). "However, '[f]indings as to credibility should be closely and affirmatively linked to substantial

evidence and not just a conclusion in the guise of findings.'" *Kepler*, 898 F.2d at 777 (quotations omitted).

In the case at hand, the ALJ found that RSD was a severe impairment, and that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (AR 19, 23.) However, he found that Plaintiff's "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent" with the RFC assessment. (*Id.* 23.) The ALJ did not clarify which statements or symptoms he found credible and which he did not, including Plaintiff's complaints of severe and chronic pain. This is error, as it makes it impossible to review the Commissioner's decision. As the Social Security Agency has made clear, while an ALJ may find a claimant's allegations credible only to a certain degree, he must specify which of the statements he finds credible and which he does not. SSR 96-7p, 1996 WL 374186, at *4[4]; *see also Parker v. Astrue,* 597 F.3d 920, 921–22 (7th Cir.2010) (stating as to the same language used by the ALJ in this case that "[i]t is not only boilerplate; it is meaningless boilerplate". . .[t]he statement by a trier of fact that a witness's testimony is 'not *entirely* credible' yields no clue to what weight the trier of fact gave the testimony").

---

[4] For example, the ruling stated that "an adjudicator may find credible an individual's statement that the abilities to lift and carry are affected by symptoms, but find only partially credible the individual's statements as to the extent of the functional limitations or restrictions due to symptoms; i.e., that the individual's abilities to lift and carry are compromised, but not to the degree alleged." Id. "Conversely, an adjudicator may find credible an individual's statement that symptoms limit his or her ability to concentrate, but find that the limitation is greater than that stated by the individual." *Id.*

This is particularly significant in this case given the fact that RSD/CRPS is, by definition and as recognized by the Social Security Agency, a chronic pain syndrome. SSR 03–2p, 2003 WL 22399117, at *1.  Indeed, a diagnosis of RSD/CRPS "requires the presence of complaints of persistent, intense pain that results in impaired mobility of the affected region." *Id.* at *2.  Further, as noted previously, it is not diagnosed through objective tests such as those referenced by the ALJ in his decision (*id.*), and the Tenth Circuit is clear that an ALJ cannot rest his credibility finding solely on the "lack of objective medical tests evidencing pain to the degree asserted by claimant." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (citing 20 C.F.R. § 404.1529(c)(2)).

While the ALJ appears to have given some weight to Plaintiff's pain symptoms, in that he limited Plaintiff to sedentary work to accommodate her "balance challenges and leg pain" and added a limitation of "no foot or leg controls" as a result of her CRPS/RSD, he failed to address the impact of Plaintiff's pain on her ability to work full-time, five days a week, eight hours a day, as required.  SSR 96-8p, 1996 WL 374184, at *2.  The Tenth Circuit has made clear that "[p]ain, even if not disabling, is still a nonexertional impairment to be taken into consideration" in the RFC.  *Thompson v. Sullivan*, 987 F.2d 1482, 1490-91 (10th Cir. 1993)  Thus, the ALJ cannot ignore a claimant's pain throughout the rest of the analysis.  *Id.*  SSR 03-2p describes the impact of pain from CRPS and the factors that must be considered relevant to same:

> Chronic pain and many of the medications prescribed to treat it may affect an individual's ability to maintain attention and concentration, as well as adversely affect his or her cognition, mood, and behavior, and may even reduce motor reaction times.  These factors can interfere with an individual's ability to sustain work activity over time, or preclude sustained work activity

> altogether. When evaluating duration and severity, as well as when evaluating RFC, the effects of chronic pain and the use of pain medications must be carefully considered.

2003 WL 22399117, at *5.

I also find that the ALJ failed in his credibility finding to address many of the relevant factors, including the location, duration, and frequency of Plaintiff's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication Plaintiff takes or has taken to alleviate pain or other symptoms; and treatment, other than medication, that Plaintiff receives or has received for relief of pain or other symptoms. SSR 96-7p, 1996 WL 374186, at *3. As in *Carpenter v. Astrue*, 537 F.3d 1264, 1268 (10th Cir. 2008), the ALJ's purported pain analysis was improper boilerplate because he . . . did not link his conclusions to the evidence or explain how Mrs. Carpenter's repeated attempts to find relief from pain, and all the drugs she has been prescribed for pain, resulted in a conclusion that she is unlimited in any regard by pain or the side effects from her pain medication). *See also Romero v. Astrue*, 242 F. App'x 536, 541 (10th Cir. 2007) ("Dr. Haddock's conclusions concerning Ms. Romero's pain and limitation. . . find support in the treatment records and therefore could not be cursorily dismissed for the reason the ALJ gave: lack of medical evidence.").

Moreover, I find that the ALJ's reasons for finding Plaintiff not fully credible are not supported by substantial evidence. Thus, the ALJ found that while Plaintiff "reported her toes were turning black, and that she would lose all of her toes", records in July of 2011 show that all of her appendages were of normal color and tone. (AR 21.)

However, CRPS is characterized by *intermittent* trophic and vasomotor signs, including temperature and skin changes, as Plaintiff notes in his Opening Brief.  Indeed, SSR 03-2p explicitly states that "[t]ransient findings are characteristic of RSDS/CRPS", and abnormal signs "may be present at one examination and not appear at another."  *Id.* at *4.  The ALJ failed to take this into consideration in connection with his finding.

The ALJ also noted that Plaintiff "reported to the consultative examiner that she was able to perform all activities of daily living."  (AR 21.)  However, the ALJ selectively applied only a portion of the information in the consultative examiner's report regarding Plaintiff's activities.  The "activities of daily living" that the consultative examiner referred to were basic functions such as toileting, transferring, donning and doffing clothing, bathing and grooming herself.  Many people are able to perform these types of basic activities, even when they have significant impairments.  However, as to other types of household activities such as housework, yard work, vacuuming, and mopping, Plaintiff stated that she can do things "on her good days" but that "when she has a bad day she is unable to do anything and she has to lay in bed and sit at home in the basement." (AR 209).  Plaintiff also testified that her pain has gradually gotten worse, and that her husband, son and other family members help with the household chores.  (*Id.* 34-35.) There is nothing in Plaintiff's description of her daily activities to the consultative examiner that is inconsistent with her other testimony or with her CRPS diagnosis. Indeed, Dr. Sandell specifically indicated that due to her CRPS diagnosis, Plaintiff would have good days and bad days.  (*Id.* 402.)  The ALJ failed to take this evidence into account.

Also as to credibility, I agree with Plaintiff that the ALJ erred in ignoring the two lay witness statements in the record from Plaintiff's stepmother and husband. These described significant limitations as a result of Plaintiff's chronic pain (AR 175-78), and are competent evidence in the context of a Social Security disability hearing. The regulations make clear that evidence from lay witnesses "is relevant to show the severity of the individual's impairment(s) and how it affects the individual's ability to function." 20 C.F.R. §416.913(d).  The ALJ did not mention these witness statements, or provide any reasons for rejecting them.  This failure also constitutes reversible error. *Blea v. Barnhart*, 466 F.3d 903, 915 (10th Cir. 2006); *Brown v. Colvin*, ___ F. App'x ___, 2014 WL 7019497, at *2 (10th Cir. Dec. 15, 2014); *see also* 20 C.F.R. § 404.1545(a)(3) (requiring the ALJ to consider such statements).  While the Commissioner argues that this is not reversible error, her arguments on this point amount to impermissible *post-hoc* rationalization, based on speculation regarding what the ALJ *might* have found *if* he had actually considered the witness statements.  *See Carpenter*, 537 F.3d at 1267) (a post-hoc rationale is improper because it usurps the agency's function of weighing and balancing the evidence in the first instance).

This error is particularly significant given Plaintiff's RSD/CRPS diagnosis.  SSR 03-02p states that:

> In cases involving RSDS/CRPS, third-party information . . . is often critical in deciding the individual's credibility.  Information other than an individual's allegations and reports from the individual's treating sources helps to assess the individual's ability to function on a day-to-day basis and helps to depict the individual's capacities over a period of time . . . . Such evidence includes, but is not limited to: . . . [i]nformation from neighbors, friends, relatives, or clergy.

Plaintiff's stepmother and husband provided key information which, if credited, would support a finding of disability in this case.

Finally, the Tenth Circuit has noted that "[s]ince the purpose of the credibility evaluation is to help the ALJ assess a claimant's RFC, the ALJ's credibility and RFC determinations are inherently intertwined. *Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009). A new determination on credibility necessarily requires reassessment of the RFC. *Id.*

III. CONCLUSION

Based upon the foregoing, it is

ORDERED that this case is **REVERSED AND REMANDED** for further fact finding as directed in this Order pursuant to sentence four in 42 U.S.C. § 405(g).

Dated: March 24, 2015

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Senior United States District Judge